TYRONE JONES,               )
                                  )
     Plaintiff,          )
                                  )    No. 4:05CV01247 FRB
        v.               )
                                  )
JO ANNE B. BARNHART,      )
Commissioner of Social Security,  )
                                )
     Defendant.         )

**MEMORANDUM AND ORDER**

       This matter is on appeal for review of an adverse ruling by the Social Security Administration, terminating the payment of disability benefits to Tyrone Jones ("plaintiff"). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I.  Procedural Background

       On November 12, 1997, plaintiff filed for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq., and on December 24, 1998, was found to be disabled. (Tr. 210-33.) Because medical improvement was expected, the Social Security Administration conducted a Continuing Disability Review of plaintiff's case, resulting in a finding on September 4, 2003, that plaintiff's disability ceased, effective September 2003. (Tr. 269-72.) On September 17, 2003, plaintiff requested reconsideration, citing major depression, severe

diabetes, hypertension, back pain, and poor circulation. (Tr. 268.) Plaintiff's request was denied at the reconsideration level on November 19, 2003. (Tr. 254-65.)

On November 24, 2003, plaintiff filed a request for hearing before an Administrative Law Judge (ALJ). (Tr. 249.) On December 1, 2004, a hearing was held before an ALJ during which plaintiff appeared and was represented by attorney Jeffrey Bunten. (Tr. 635-47.) On January 6, 2005, the ALJ issued a decision unfavorable to plaintiff, and plaintiff filed a Request for Review on February 3, 2005. (Tr. 14-25; 12-13.) On June 13, 2005, after consideration of additional evidence, the Appeals Council denied plaintiff's Request for Review. (Tr. 8-11.) The ALJ's decision thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

At the hearing on December 1, 2004, plaintiff responded to a series of questions from the ALJ. Plaintiff testified that he was thirty-seven years old, and was separated from his wife. (Tr. 639.) Plaintiff has three children, by women other than his wife. Id.  Plaintiff is five feet, ten inches tall, and weighs 236 pounds. (Tr. 642.) He is left-handed. Id. Plaintiff testified that, although he has not recently held a job, he did submit job applications for "a couple of places," one of which was a security company that offered him a job. (Tr. 640.) Plaintiff testified

that, when he placed the applications, he was attempting to secure private security employment, but had reservations about accepting such a job due to his inability to stand for long periods of time or deal with the public. (Tr. 640.) Plaintiff testified that he does not get along with people because he feels they criticize him. (Tr. 640-41.) Plaintiff testified that he does not socialize with people due to his attitude and temper, and explained "that way nobody would get hurt." Id.

Plaintiff testified that he lived at 7225 Pasadena with his brother, Jerome Jones. (Tr. 641.) Plaintiff testified that he obtained his GED at age twenty-eight, and that the last job he held was factory work for a "temp service," which he quit after one day due to strained ligaments in his left hand. Id. Plaintiff testified that he had worked as a laborer and in fast food as a teenager, but that the main job he had held was as a security officer. (Tr. 642.) Plaintiff testified that his driver's license was suspended following an accident in 1989, apparently due to his failure to pay for damage to the other vehicle. (Tr. 643.)

Plaintiff testified that he obtained medication from "Connect A Care," and saw a doctor (whom plaintiff did not name) every six to eight weeks for treatment. Id. Plaintiff testified that he was unable to work due to depression, hearing loss and sleep apnea. Id. Regarding his daily activities, plaintiff testified that, if he was "feeling okay and not too tired" he would try to watch television or simply try to relax. (Tr. 644.) He

further testified that he vacuumed occasionally, and generally helped his brother keep the apartment tidy.  Id.

Plaintiff then responded to a series of questions from his attorney.  Regarding his hearing in his left ear, plaintiff testified that he had been given a hearing aid to try for thirty days, and that after twenty-two days, he was unsatisfied with it. (Tr. 645.)  Plaintiff testified that he planned to return to the provider and have it adjusted, but was not optimistic.  Id. Plaintiff testified that he was able to hear his attorney, but had trouble hearing the judge, and further stated that he had constant ringing and pressure in his ear.  Id.  Plaintiff testified that he suffered from sleep apnea and felt sleepy "all the time," and that his medications caused drowsiness and diarrhea.  Id.

### III.  Medical Records[1]

The record indicates that plaintiff was seen at Barnes

---

[1]Included in this summary of the medical records are materials dating from the earlier, previously adjudicated period, as such materials were part of the record before the ALJ in the instant case, and are relevant to the plaintiff's medical history.  See Hamlin v. Barnhart, 365 F.3d 1208, 1215-16 (10th Cir. 2004).

Further, additional evidence which was not before the ALJ was submitted to and considered by the Appeals Council.  This evidence consists primarily of the medical records from Barnes Jewish Hospital (records of Dr. Mini Tandon, D.O.) documenting plaintiff's treatment for depression from January 13, 2005 through March 30, 2005.  (Tr. 7; 11; 544-634.)  The Court must consider these records in determining whether the ALJ's decision was supported by substantial evidence.  Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994).  For the sake of continuity, discussion of these records is incorporated with that of the records before the ALJ at the time of his decision.

Hospital on November 9, 1995, following a motor vehicle accident. (Tr. 86.) Radiological studies of plaintiff's thoracic spine and four views of his lumbosacral spine revealed normal results. (Tr. 90.)

Records from Dr. Douglas Brust, D.C., indicate that plaintiff received treatment from November 16, 1995, through January 2, 1996, following a motor vehicle accident. (Tr. 102-17.) Radiological studies of plaintiff's cervical, thoracic and lumbar spine, taken on November 20, 1995, revealed evidence of muscle spasm in plaintiff's cervical spine. (Tr. 109.) Plaintiff complained of pain in his cervical, thoracic and lumbar areas, and was treated with electrical stimulation and chiropractic manipulation. Id. Plaintiff was further advised to perform home exercises and stretches. Id. Dr. Brust's records indicate that plaintiff continually improved during his course of treatment. Id. On December 5, 1997, at the request of the St. Louis Disability Determination Services, Dr. Brust completed an evaluation form in which he indicated plaintiff's diagnosis of sprain/strain of plaintiff's cervical, thoracic, lumbar, ankle, and wrist areas, and further indicated that plaintiff exhibited a normal range of motion when last seen. (Tr. 102.)

Records from Barnes Hospital indicate that plaintiff was seen in the emergency room on October 8, 1996, for treatment of an open sore with drainage on his right leg. (Tr. 92.) On April 16, 1997, plaintiff again presented for treatment for a laceration to

his left thumb which occurred while trying to adjust a car seat. (Tr. 95.)

Records from St. Louis ConnectCare, Max C. Starkloff Clinic ("Starkloff Clinic"), indicate that plaintiff was seen from October 30, 1997, through April 14, 1998, for diabetes management, and treatment for blurred vision and depression. (Tr. 118-33.) Throughout his course of treatment, plaintiff was prescribed insulin, Thiamine,[2] Zoloft,[3] and Elavil.[4] (Tr. 119; 130.) The February 6, 1998, office note indicates that plaintiff was "much less stressed." (Tr. 132.)

On December 8, 1997, plaintiff underwent a psychiatric evaluation by Dr. Georgia Jones, M.D. (Tr. 137-41.) Plaintiff reported feeling sad and depressed due to multiple losses in his life, including a failed marriage, an inability to become a police officer or maintain employment, and an inability to see his child due to his non-payment of child support. (Tr. 137-38.) Dr. Jones diagnosed plaintiff with major affective disorder and depression, and very poorly controlled diabetes which Dr. Jones opined

---

[2]Thiamine, or Vitamin B1, is used by the body to break down sugars in the diet. Medline Plus (last revised Apr. 1, 2003) <http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682586.html>.

[3]Zoloft is indicated for use in the treatment of depression. Medline Plus (last revised Apr. 1, 2005)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a697048.html>.

[4]Elavil is indicated for use in the treatment of depression. Medline Plus (revised Feb. 1, 2005)<(http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202055.html>.

contributed to his mood disturbance, and assigned plaintiff a GAF of 65-70. (Tr. 140.) Dr. Jones opined that plaintiff had not aggressively followed through with his psychiatric treatment, and further stated that plaintiff's prognosis would be improved if he controlled his blood sugar. (Tr. 140-41.)

Also on December 8, 1997, plaintiff was seen by Dr. Loretta Mendoza, M.D., for evaluation of his diabetes and low back pain. (Tr. 142-45.) Dr. Mendoza's impressions were diabetes with no diabetic retinopathy and good circulation in both lower extremities, and a normal exam relative to his low back. (Tr. 144.) Dr. Mendoza opined that plaintiff could perform moderate to heavy lifting; could sit, stand and walk without limitation; and further had no restrictions regarding his vision or hearing. Id. X-rays taken of plaintiff's lumbar spine on December 8, 1997, yielded normal results. (Tr. 146.)

At the request of the St. Louis Disability Determination Services, plaintiff was evaluated by Dr. James D. Reid, Ph.D., on March 3, 1998. (Tr. 163-68.) Dr. Reid noted plaintiff's chief complaints as diabetes, depression, low back pain, poor circulation, problems with eyesight, and hypertension. (Tr. 163.) Dr. Reid concluded that the results of plaintiff's examination failed to provide evidence of any significant psychological disorder that may prevent the plaintiff from engaging in sustained employment or lead to marked functional impairment. (Tr. 167-68.) On this same date, plaintiff was again evaluated by Dr. Mendoza,

and complained of trouble with his vision. (Tr. 169-73.) Dr. Mendoza noted an essentially normal eye exam, except for mild error of refraction. (Tr. 172.) Dr. Mendoza imposed no work restrictions. Id.

Records from the Starkloff Clinic indicate that plaintiff was seen from July 2, 1998, through September 14, 1998. (Tr. 182-200.) On September 14, 1998, Dr. Naveena Gallapudi, M.D., reported that plaintiff was limited in his ability to be around moving machinery, heights and noise, and was unable to work due to deep depression, but that medication was helping and may facilitate a return to work. (Tr. 200.)

On September 11, 2002, plaintiff was seen in the Starkloff Clinic by Dr. Ravi Nayak with complaints relative to diabetes, obstructive sleep apnea, hypertension, hyperlipidemia, and "feeling sad." (Tr. 439-40.) He was referred for a sleep study and given Glucotrol.[5] Plaintiff was seen again on December 18, 2002, with complaints of depressed mood, poor socialization, crying spells, and mood swings. He was diagnosed with depression. (Tr. 436-37.) Dr. Nayak prescribed Zoloft and referred plaintiff to a psychiatrist. (Tr. 437.) Plaintiff saw Dr. Nayak again on December 23, 2002, and was diagnosed with chlamydia. (Tr. 435.)

_____

[5]Glucotrol is indicated for use in the treatment of Type 2 diabetes. Medline Plus (last revised Apr. 1, 2005)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a684060.html>.

Dr. Nayak prescribed Doxycycline.[6]  Id.

On June 3, 2003, plaintiff presented to the Starkloff Clinic, but left before he was seen by a doctor.  (Tr. 434.) Plaintiff was seen on June 20, 2003, with complaints of discoloration and numbness in his big toe.  Plaintiff further complained of depression and agitation, and difficulty concentrating.  (Tr. 432.)

On July 17, 2003, plaintiff was seen for psychological and medical evaluations at the West Park Medical Clinic by psychologist Harry J. Deppe, Ph.D., and Raymond Leung, M.D., respectively.  (Tr. 417-26.)  Dr. Deppe diagnosed plaintiff with alcohol dependence (partial remission) and polysubstance abuse by history; diabetes and hypertension.  (Tr. 420.)  Dr. Deppe did not diagnose plaintiff with depression.  See id.  Dr. Deppe found that plaintiff had "moderate" changes in his interests or habits as a result of his impairment, and further found plaintiff had mild to moderate restrictions of his daily activities.  (Tr. 419.)  Dr. Deppe assigned a GAF of 50-60.  (Tr. 420.)

Upon medical exam, Dr. Leung's impression was diabetes and hypertension.  (Tr. 424.)  Dr. Leung noted that plaintiff's blood pressure was "good" at 140/86, and found no evidence of any kidney disorder or circulatory problems.  Id.  Dr. Leung further

_____

[6]Doxycycline is indicated for use in the treatment of bacterial infections.  Medline Plus (revised May 14, 2001)<http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202552.html>.

noted that plaintiff's visual acuity was normal when he wore his glasses. Id. Dr. Leung finally noted no diagnosis for low back pain and stated that he found plaintiff's back to be non-tender with a full range of motion in the lumbar spine, and that plaintiff had a normal gait. Id.

On August 13, 2003, Dr. Robert "Rocco" Cottone, Ph.D., completed a mental residual functional capacity ("RFC") assessment and concluded that plaintiff must avoid work involving intense or extensive interpersonal interaction, close coordination or communication with other workers or supervisors, public contact involving handling complaints or dissatisfied customers, and proximity to available controlled substances. (Tr. 387.) Dr. Cottone further opined that plaintiff was able to understand, remember, carry out, and persist at simple to moderately complex tasks; make simple to moderately complex work-related judgments; relate adequately to co-workers and supervisors; and adjust adequately to ordinary changes in work routine and setting. Id.

On August 14, 2003, plaintiff was seen at the Starkloff Clinic for an eye exam. No diabetic changes were noted. (Tr. 431.)

On September 2, 2003, psychiatrist Judy Martin, M.D., reviewed plaintiff's mental RFC assessment. (Tr. 379.) Dr. Martin determined that plaintiff's recent medical records did not document symptoms consistent with a diagnosis of depression. (Tr. 379.) Dr. Martin noted that plaintiff did not follow up with a mental

health specialist, and concluded that this failure to seek treatment decreased his credibility regarding the severity of his depressive symptoms and alleged functional limitations. Id.

Plaintiff saw Dr. Nayak on September 19, 2003, and was assessed with hypertension, diabetes, hyperlipidemia, depression, probable obstructive sleep apnea, and improved liver function testing. (Tr. 429.) Plaintiff was given Lisinopril,[7] Metformin,[8] Zoloft, and Lovastatin.[9]

Records from Dr. Stephen Kelly, M.D., indicate that plaintiff was seen on October 15, 2003, with a normal exam relative to his blood pressure, breath sounds, vision, and low back. (Tr. 374.) On this same date, a mental RFC assessment was done by Dr. Charles A. Pap, Ph.D., who found that plaintiff was markedly limited in his ability to carry out detailed instructions; and moderately limited in his ability to interact with the public, respond appropriately to criticism from supervisors, be aware of normal hazards, and set realistic goals. (Tr. 375-76.) Dr. Pap opined that plaintiff retained the ability to perform simple tasks

---

[7]Lisinopril is indicated for use in the treatment of hypertension. Medline Plus (last revised July 1, 2003)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a692051.html>.

[8]Metformin is indicated for use in the treatment of Type 2 diabetes. Medline Plus (last revised Oct. 1, 2005)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a696005.html>.

[9]Lovastatin is used in conjunction with lifestyle and dietary changes to control the amount of cholesterol in the blood. Medline Plus (last revised July 1, 2006)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a688006.html>.

and to work with limited social interactions.  (Tr. 376.)

On October 29, 2003, plaintiff was seen in Podiatry at the Starkloff Clinic with complaints relative to discoloration in his great toenails.  (Tr. 529.)  Although the majority of these notes are illegible, it does appear that plaintiff was counseled regarding diabetic foot care.  Id.  On November 18, 2003, plaintiff presented to the Clinic for a flu vaccine.  (Tr. 528.)  The records further indicate that plaintiff missed a podiatry appointment on January 23, 2004.  Id.

On February 18, 2004, plaintiff visited Dr. Nayak at the Starkloff Clinic with complaints of hearing loss and tinnitus in his left ear.  (Tr. 526.)  Dr. Nayak noted that plaintiff missed some labs, was not compliant with his Lovastatin, stopped Zoloft on his own, and missed an appointment in the pulmonary clinic.  Id. Plaintiff was diagnosed with hearing loss, and was further referred to the sleep disorder clinic at Washington University.  (Tr. 527.) Dr. Nayak noted that plaintiff did not want to take cholesterol lowering medication.  Id.

On March 25, 2004, plaintiff was seen in the Lillian Courtney Clinic which, along with the Starkloff Clinic, is a part of St. Louis ConnectCare.  (Tr. 524.)  Plaintiff presented for routine diabetic foot care and complained of a burning sensation around both great toenails.  Id.  It was noted that plaintiff had a fungal infection.  Id.  On August 24, 2004, plaintiff saw Dr. Nayak and complained of pain in his left shoulder.  (Tr. 465.)  Dr.

Nayak noted that plaintiff's mood was depressed, and further noted that plaintiff missed his appointment with the sleep clinic.  Id.

A hearing test performed by the Center for Hearing and Speech on September 20, 2004, showed plaintiff to have moderate to severe "SNHL," or sensorineural hearing loss, on the right; and profound SNHL on the left.  With respect to speech recognition, it was noted that plaintiff scored at 62% on the right, which was considered fair; and 4% on the left, which was considered poor. Monaural amplification was recommended for the right ear.  (Tr. 555.)

On December 12, 2004, plaintiff returned to the Center for Hearing and Speech for additional testing of the right ear. Testing showed moderate to severe SNHL on the right, with speech recognition measured at 36% which was noted to be a significant decline from the September 2004 results.  It was recommended that plaintiff undergo ENT evaluation.  (Tr. 556.)

Records from Barnes-Jewish Hospital indicate that plaintiff saw Dr. Mini Tandon, D.O., on January 13, 2005 for an initial psychiatric evaluation.[10]  (Tr. 626, 633.)  Plaintiff reported feeling depressed since approximately 1992.  (Tr. 626.) Dr. Tandon noted that plaintiff was initially tearful, but became

---

[10]The following medical records from Barnes-Jewish Hospital document Dr. Tandon's treatment of plaintiff from January 13, 2005, through March 2, 2005.  As noted, supra, these materials were submitted to the Appeals Council following the ALJ's January 6, 2005, decision, and discuss treatment plaintiff received after that decision was rendered.

happy towards the end of the interview. (Tr. 627.) Dr. Tandon diagnosed plaintiff with moderate and recurrent major depressive disorder, and noted that plaintiff had been treated with multiple antidepressants and had recently responded well to Wellbutrin.[11] (Tr. 633.) Dr. Tandon advised plaintiff to take Fluoxetine[12] for the next four days only, and then begin taking Wellbutrin. Dr. Tandon further advised plaintiff to follow up in one week. (Tr. 632, 634.)

Plaintiff next presented to Dr. Tandon on January 20, 2005. (Tr. 624.) Plaintiff reported that he did not transition from Prozac (Fluoxetine) to Wellbutrin in the manner Dr. Tandon instructed. Id. Plaintiff further reported that his mother had recently been diagnosed with breast cancer. Id. Plaintiff reported that he was interested in cognitive behavior therapy, and advised that he planned to decrease his consumption of fried foods and begin exercising. Id.

On January 28, 2005, plaintiff reported that he had been focusing on controlling his blood sugars, and had been unable to accomplish his "therapy homework." (Tr. 620.) Plaintiff further reported a short-term goal of finishing reading a book. Id. Dr.

---

[11]Wellbutrin is indicated for use in the treatment of depression. Medline Plus (last revised Apr. 1, 2005)<http: //www.nlm.nih.gov/medlineplus/druginfo/medmaster/a695033.html>.

[12]Fluoxetine, also known as Prozac, is indicated for use in the treatment of depression. Medline Plus (last revised Apr. 1, 2005)<http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a6890 06.html>.

Tandon noted that plaintiff was tolerating the Wellbutrin, that his mood was "ok," and that he was laughing and joking. <u>Id.</u> On February 4, 2005, plaintiff presented to Dr. Tandon and reported that the Wellbutrin was "kicking in" and was causing no side effects; and that he felt less irritable, less frustrated, and was experiencing fewer crying spells. (Tr. 615.) Dr. Tandon noted that plaintiff was calmer than at the last appointment and was no longer tearful. (Tr. 616.)

On February 11, 2005, plaintiff presented to Dr. Tandon and reported being upset due to the discontinuation of his benefits. (Tr. 611.) Plaintiff stated that he understood that his benefits would continue as long as he continued psychiatric care. <u>Id.</u> Dr. Tandon increased plaintiff's dosage of Wellbutrin. <u>Id.</u>

On February 18, 2005, plaintiff saw Dr. Tandon, who noted that plaintiff was tolerating the increased dosage of Wellbutrin and further noted that plaintiff appeared calm and that his mood was "ok." (Tr. 608.) Plaintiff saw Dr. Tandon again on March 2, 2005, and reported that his father had died that morning. (Tr. 604.) Dr. Tandon noted that plaintiff stated as follows: "I know the Wellbutrin is helping because I don't cry as much and I sleep better." <u>Id.</u> Dr. Tandon noted that plaintiff was responding to the therapy goals of walking, reading, increasing his coping skills, and taking his medications regularly, but noted that plaintiff had failed to enroll in a hearing loss group. <u>Id.</u> Dr. Tandon noted plaintiff's good response to Wellbutrin and

plaintiff's improved coping skills despite the recent stressors in his life. (Tr. 605.) Finally, on March 30, 2005, Dr. Tandon wrote the following note: "Tyrone Jones is unable to work at this time due to medical concerns related to depression." (Tr. 600.) Dr. Tandon's note does not indicate that she saw plaintiff on this date. See id.

## IV.  The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial activity at any time relevant to his decision, and further found that plaintiff's impairments, present as of December 24, 1998, had shown significant medical improvement and were no longer disabling. (Tr. 24.) The ALJ found that plaintiff had the medically determinable severe impairments of diabetes, hyper-tension, bilateral hearing loss, alcohol dependence (partial remission), and polysubstance abuse by history, but that none of these impairments were of listing-level severity. Id. The ALJ, citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and the relevant factors therefrom, further found that plaintiff's allegations of inability to work were not fully credible because of significant inconsistencies on the record as a whole. (Tr. 21-22; 24.) More specifically, regarding plaintiff's alleged physical impairments, the ALJ found that plaintiff's allegations of physical impairment were inconsistent with the unremarkable findings upon examination in July 2003, and further noted that, although

plaintiff alleged disabling back pain, the record contained no documentation that plaintiff participated in or sought treatment. (Tr. 22.) The ALJ found this lack of documentation in the record to be inconsistent with plaintiff's allegation of disabling back pain. Id. Similarly, with regard to plaintiff's allegations of psychological impairment, the ALJ noted plaintiff's unremarkable findings upon psychiatric exam, and further noted plaintiff's acknowledgment to a consultative examiner in July 2003 that he was then under no psychiatric care and was taking no psychotropic medications. Id. The ALJ noted that the plaintiff's failure, during a claimed period of disability, to more diligently seek care was inconsistent with his allegations of disabling psychiatric impairment. (Tr. 22.) Finally, the ALJ noted that, by plaintiff's own report, he retained the residual functional capacity to attend to his personal care, prepare simple meals, drive a vehicle, use public transportation, shop, and perform simple household tasks such as laundry, ironing, doing the dishes, vacuuming, dusting, and taking out the trash. Id.

The ALJ found that plaintiff retained the residual functional capacity to perform heavy or very heavy work, including the functional capability for work at the lesser functional levels. Id. The ALJ found that plaintiff retained the capacity to understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervisors, co-workers and usual work situations; and deal with

changes in a routine work setting.  (Tr. 24-25.)  The ALJ found
that plaintiff's past relevant work required the performance of
work-related activities precluded by these limitations, but found
that plaintiff was able to make a vocational adjustment to work
which existed in significant numbers in the national economy.  (Tr.
25.)  The ALJ concluded that plaintiff was not under a disability
as defined in 20 C.F.R. § 416.920(f) as of September 15, 2003.  <u>Id.</u>

### V.  Discussion

        To be eligible for Supplemental Security Income under the
Social Security Act, plaintiff must prove that he is disabled.
<u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker
v. Secretary of Health & Human Services</u>, 955 F.2d 552, 555 (8th
Cir. 1992).  The Social Security Act defines disability as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than twelve
months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be
declared disabled "only if his physical or mental impairment or
impairments are of such severity that he is not only unable to do
his previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy."  42 U.S.C. §
1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner utilizes a five-step evaluation process. See 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by considering the claimant's work activity. If the claimant is engaged in substantial gainful activity, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe impairment," meaning one which significantly limits his ability to do basic work activities. If the claimant's impairment is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant has the residual functional capacity to perform his past relevant work. If so, the claimant is not disabled. If not, the burden then shifts to the Commissioner to prove that there are other jobs that exist in substantial numbers in the national economy that the claimant can perform. Pearsall, 274 F.3d at 1217; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). Absent such proof, the claimant is declared disabled and becomes entitled to disability benefits.

The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Young v.

Shalala, 52 F.3d 200 (8th Cir. 1995) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  Substantial evidence is less than a preponderance but enough that a reasonable person would find adequate to support the conclusion.  Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998).  To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ;

2.    The plaintiff's vocational factors;

3.    The medical evidence from treating and consulting physicians;

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;

5.    Any corroboration by third parties of the plaintiff's impairments;

6.    The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the plaintiff's impairment.

Stewart v. Secretary of Health & Human Services, 957 F.2d 581, 585-86 (8th Cir. 1992), quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Court must also consider any "evidence which fairly detracts from the ALJ's findings."  Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991); see also Briggs, 139 F.3d at 608. However, where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because

substantial evidence may support a different outcome.  <u>Briggs</u>, 139 F.3d at 608; <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992)(citing <u>Cruse</u>, 867 F.2d at 1184).

In the case at bar, plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to determine plaintiff's residual functional capacity in accord with <u>Singh v. Apfel</u>, 222 F.3d 448 (8th Cir. 2000), and <u>Lauer v. Apfel</u>, 245 F.3d 700 (8th Cir. 2001).  Plaintiff further submits that the ALJ failed to fully and fairly develop the record, and that the medical evidence of record indicates that plaintiff suffers from depression.  Plaintiff also argues that the ALJ failed to properly consider plaintiff's subjective complaints under the standards of <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984). Finally, plaintiff contends that, because the record established that plaintiff has significant non-exertional impairments, the ALJ's decision is not based upon substantial evidence because it lacks vocational expert testimony.

A.   <u>Appeals Council Review</u>

As an initial matter, the undersigned notes that plaintiff appears to argue that the Appeals Council failed to properly consider evidence obtained from Dr. Tandon which was submitted to the Appeals Council with plaintiff's request for review of the ALJ's decision.

As set forth above, plaintiff submitted to the Appeals Council new medical evidence from Dr. Tandon which documented

plaintiff's treatment for depression from January 13, 2005, through March 2, 2005.  After consideration of this evidence, the Appeals Council determined that such evidence did not provide a basis upon which to permit its review the ALJ's decision.  (Tr. 8-11.)

Upon request for review of an ALJ's adverse decision, the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision.  Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000); 20 C.F.R. § 416.1470(b).  The new evidence thus becomes a part of the administrative record.  Cunningham, 222 F.3d at 500. "If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case."  Id. (citing 20 C.F.R. § 404.970(b)); 20 C.F.R. § 416.1470(b).  Where the Appeals Council denies review, as it did here, this Court "do[es] not evaluate the Appeals Council's decision to deny review, but rather [the Court must] determine whether the record as a whole, including the new evidence, supports the ALJ's determination."  Cunningham, 222 F.3d at 500.

As such, to the extent plaintiff claims the Appeals Council failed to properly consider the new evidence from Dr. Tandon, this Court lacks authority to review this action of the Appeals Council inasmuch as it determined to deny review of the ALJ's decision.  Instead, inasmuch as the new evidence is now part

of the administrative record, the role of the Court is to determine how the ALJ would have weighed the newly submitted evidence if it had been presented at the original hearing, <u>Jenkins v. Apfel</u>, 196 F.3d 922, 924 (8th Cir. 1999) (citing <u>Riley v. Shalala</u>, 18 F.3d 619, 622 (8th Cir. 1994)), and determine whether the ALJ's opinion is supported by substantial evidence on the record as a whole, including the new evidence. <u>Frankl</u>, 47 F.3d at 939.

B. <u>Credibility Determination</u>

Plaintiff argues that the ALJ failed to properly consider his subjective complaints in accord with <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984). Plaintiff specifically contends that the ALJ's decision is not based upon substantial evidence because it does not take into account the records of Dr. Tandon, and further argues that the ALJ improperly considered plaintiff's daily activities.

"A claimant has the burden of proving that his disability results from a medically determinable physical or mental impairment." <u>Polaski</u>, 739 F.2d at 1321. However, testimony regarding pain is necessarily subjective in nature, as it is the Plaintiff's own perception of the effects of his alleged physical impairment. <u>Id.</u>; <u>Halpin v. Shalala</u>, 999 F.2d 342, 346 (8th Cir. 1993). Because of the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. <u>Polaski</u>, 739 F.2d at 1321-22. The Eighth Circuit

addressed this difficulty in <u>Polaski</u>, and established the following

standard for the evaluation of subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

<u>Id.</u> at 1322.

Although the ALJ is not free to accept or reject the

claimant's subjective complaints based upon personal observations

alone, he may discount such complaints if there are inconsistencies

in the evidence as a whole. <u>Id.</u> The "crucial question" is not

whether the claimant experiences symptoms, but whether his credible

subjective complaints prevent him from working. <u>Gregg v. Barnhart</u>,

354 F.3d 710, 713-14 (8th Cir. 2003). When an ALJ explicitly

considers the <u>Polaski</u> factors and discredits a claimant's

complaints for a good reason, that decision should be upheld.

<u>Hogan v. Apfel</u>, 239 F.3d 958, 962 (8th Cir. 2001). The credibility

of a claimant's subjective testimony is primarily for the ALJ, not

the courts, to decide. <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th

Cir. 2005).

In the instant matter, the ALJ specifically cited <u>Polaski</u>
and all of the relevant factors therefrom. The ALJ then set forth
numerous inconsistencies in the record to support his conclusion
that plaintiff's complaints were not credible. (Tr. 21-22.) The
ALJ noted that Dr. Deppe's evaluation of plaintiff yielded normal
findings, with the exception of a "flattened" mood and somewhat
restricted affective responses. (Tr. 22.) Dr. Deppe did not
include a diagnosis of depression in his records. (Tr. 420.) The
ALJ further noted that Dr. Leung's physical and neurological
examinations of plaintiff yielded normal findings, that plaintiff's
hypertension and diabetes were managed with medication, and that
his vision was corrected to 20/20. (Tr. 19-20.) In addition, the
ALJ noted that the record contained no evidence that plaintiff was
under active treatment or that he was actively seeking treatment
for any psychological or physical condition. (Tr. 20-22.) <u>Banks</u>,
258 F.3d at 825-26 (ALJ properly discounted claimant's complaints
of disabling depression as inconsistent with his failure to seek
psychiatric treatment and with his daily activities); <u>Davis</u>, 239
F.3d at 967 (ALJ can properly take into account claimant's failure
to make significant efforts to seek treatment); <u>Shannon</u>, 54 F.3d at
486 (failure to seek treatment may be inconsistent with a finding
of disability). A review of the record further shows that
plaintiff never took much, if any, prescription medication to
relieve the pain he allegedly experienced. <u>See</u> <u>Haynes v. Shalala</u>,

26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with allegations of disabling pain); see also Singh, 222 F.3d at 453 (a claimant's allegations of disabling pain may be discredited by evidence that the claimant received only minimal medical treatment and/or has taken only occasional pain medication).

Following his extensive discussion of the foregoing, the ALJ noted plaintiff's testimony, in which he indicated his ability to attend to self-care activities, prepare simple meals, do certain household chores, drive a vehicle, use public transportation, and shop. (Tr. 22.) The ALJ concluded that, while not dispositive, plaintiff's ability to engage in these activities was inconsistent with his allegations of disability. Id. Although plaintiff alleges error in the ALJ's notation of plaintiff's daily activities, the undersigned finds no such error, given the ALJ's statement that plaintiff's daily activities were not dispositive, and given the totality of the evidence in the record supporting the ALJ's findings. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (ALJ's arguable deficiency in opinion-writing technique does not require a credibility finding to be set aside where it otherwise is supported by substantial evidence).

A review of the ALJ's decision shows that, in a manner consistent with and as required by Polaski, the ALJ considered plaintiff's subjective complaints on the basis of the entire record before him, set out inconsistencies detracting from plaintiff's

credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. <u>Battles v. Sullivan</u>, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ's credibility determination is supported by good reasons and substantial evidence on the record as a whole, this Court must defer to the ALJ's credibility determination. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992); <u>Hogan</u>, 239 F.3d at 962.

C.   <u>RFC Determination</u>

     Plaintiff argues that the ALJ erred in his determination of plaintiff's RFC. The ALJ in this matter determined that, although plaintiff's limitations precluded performance of his past relevant work, he nevertheless retained the RFC for heavy to very heavy work.[13] (Tr. 24-25.) Plaintiff claims that this decision runs afoul of the Eighth Circuit precedent established in <u>Singh</u>, 222 F.3d 448, and <u>Lauer</u>, 245 F.3d 700, because the ALJ failed to fully and fairly develop the record; because the medical evidence of record, particularly the records from Dr. Tandon, indicated that plaintiff suffered from depression; and that plaintiff's significant hearing loss must necessarily result in restrictions.

     Residual functional capacity is what a claimant can do

---

[13]Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to fifty pounds. 20 C.F.R. § 416.967(d). Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing fifty pounds or more. 20 C.F.R. § 416.967(e).

despite his limitations. 20 C.F.R. § 416.945, <u>Lauer</u>, 245 F.3d at 703. At the fourth step of the evaluation process, while the burden of proof is still upon the claimant, the Commissioner determines whether the claimant has the RFC to perform his past relevant work, and if so, the claimant is determined not disabled. <u>Pearsall</u>, 274 F.3d at 1217. If not, the process continues to step five, where the burden shifts to the Commissioner to prove both that the claimant retains the RFC to perform other kinds of work and that such work exists in substantial numbers in the national economy. <u>Singh</u>, 222 F.3d at 451 (citing <u>Nevland</u>, 204 F.3d at 857). The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995); <u>Goff v. Barnhart</u>, 421 F.3d 785, 793 (8th Cir. 2005); 20 C.F.R. § 416.945(a). A claimant's RFC is a medical question, however, and some medical evidence, along with all other relevant, credible evidence in the record, must support the ALJ's RFC determination. <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711-12 (8th Cir. 2001); <u>Lauer</u>, 245 F.3d at 703-04; <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. <u>Hutsell</u>, 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not

required to produce evidence and affirmatively prove that a claimant can lift a certain weight or walk a certain distance. Pearsall, 274 F.3d at 1217; McKinney, 228 F.3d at 863.

With respect to plaintiff's assertion of physical impairments, the ALJ noted in his decision that, when plaintiff presented to Dr. Leung for consultative examination, he reported low back pain and decreased visual acuity, and related past diagnoses of diabetes and hypertension, both of which were controlled with prescription medication. (Tr. 19.) See Johnson, 240 F.3d at 1148 (impairments controllable or amenable to treatment are incompatible with a finding of disability). The ALJ noted that Dr. Leung found that plaintiff's blood pressure was good at 140/86, and that plaintiff's physical and neurological examinations were normal. (Tr. 19-20.) The ALJ noted that Dr. Leung found that plaintiff had a corrected visual acuity of 20/20 with full visual fields, and further noted that examination of plaintiff's extremities revealed no objective medical signs of circulatory problems. (Tr. 20.) Regarding plaintiff's allegations of disability due to musculoskeletal discomfort, Dr. Leung found that plaintiff exhibited full range of motion and that he was able to move on and off the exam table without difficulty, walk 50 feet unassisted, and heel/toe walk and squat. Id. Dr. Leung further found no muscle spasm, and noted intact motor, sensory and reflex function. Id. The ALJ also noted that the record failed to document plaintiff's ongoing participation in any conservative

treatment for his alleged back pain, and concluded that this was inconsistent with plaintiff's allegations of disabling pain. Davis, 239 F.3d at 967 (ALJ can properly take into account claimant's failure to make significant efforts to seek treatment); Shannon, 54 F.3d at 486 (failure to seek treatment may be inconsistent with a finding of disability). On such evidence, it cannot be said that the ALJ erred in his RFC determination that plaintiff retained the physical capacity to engage in heavy work.

With respect to plaintiff's hearing impairment, however, the undersigned notes that the ALJ wholly failed to take into account substantial medical evidence of plaintiff's significant hearing loss when determining plaintiff's RFC. Instead, the ALJ appeared to rely on the observations of Dr. Deppe that plaintiff appeared to have no trouble hearing him during his consultative psychological evaluation. (Tr. 20-21.) Under 20 C.F.R. § 416.945(d), the Commissioner must consider any limitations and restrictions which result from hearing impairments when deciding a claimant's RFC. Without discounting the evidence of record from hearing specialists documenting the continuing and deteriorating nature of plaintiff's severe hearing loss, it was error for the ALJ to credit the mere observation of a consulting physician that plaintiff understood what was said to him and responded appropriately, audibly and understandably. In light of the ALJ's failure to properly address credible and substantial evidence on the record relating to plaintiff's significant hearing loss, it

cannot be said that substantial evidence on the record as a whole supports the ALJ's RFC determination in toto, and the cause should therefore be remanded for further consideration and proper evaluation of plaintiff's hearing impairment.

With respect to plaintiff's mental impairment, the ALJ noted in his decision that the record was void of any evidence that plaintiff was pursuing any psychiatric treatment or taking any psychotropic medication. (Tr. 18.) Specifically, the ALJ noted that, when plaintiff presented to Dr. Deppe on July 17, 2003, for consultative examination, he reported that he was not under any psychiatric care and was not taking any psychotropic medications. (Tr. 18; 20-21.) See Banks v. Massanari, 258 F.3d 820, 825-26 (8th Cir. 2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with his failure to seek psychiatric treatment and with his daily activities); Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (ALJ can properly take into account claimant's failure to make significant efforts to seek treatment); Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) (failure to seek treatment may be inconsistent with a finding of disability). The ALJ further noted that Dr. Deppe's findings upon exam were unremarkable, with the exception of a notation of flat affect and restricted mood. (Tr. 18; 20-21.) The ALJ also noted that plaintiff was found to have fair emotional and mental functioning relevant to his abilities to relate to others, understand and follow simple instructions, maintain attention, and

deal with stress and pressures associated with day-to-day work activity. Id. Upon this evidence, and in accordance with 20 C.F.R. § 416.920a for evaluating mental impairments, the ALJ determined plaintiff's mental impairment to result in mild restriction with respect to activities of daily living; mild to moderate restriction with respect to social functioning; and mild to moderate restriction with respect to concentration, persistence or pace. (Tr. 21.) It cannot be said that, on the evidence before the ALJ at the time of his decision, substantial evidence on the record as a whole failed to support these findings.

However, the undersigned notes that medical records of Dr. Tandon's subsequent treatment of plaintiff's mental impairment were submitted to and considered by the Appeals Council in its determination not to review the ALJ's decision, thereby requiring this Court to determine how the ALJ would have weighed this newly submitted evidence if it had been presented at the original hearing. Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)). The Court would thus be required to speculate as to how the ALJ would have weighed this evidence had it been before him at the time of his decision. Flynn v. Chater, 107 F.3d 617, 622 (8th Cir. 1997) (citing Riley, 18 F.3d at 622). As discussed above, this cause will be remanded to the Commissioner for proper consideration and analysis of the record as a whole as it relates to plaintiff's functional limitations caused by his hearing impairment. Inasmuch

as the cause will be before the Commissioner for further consideration, the undersigned considers it appropriate for an ALJ upon remand to review Dr. Tandon's records in the first instance and determine the appropriate weight to be given thereto, than to require this Court to undergo speculation as how the ALJ would have treated the records if they had been before him at the time of his decision. This is especially true where, as here, the ALJ appeared to find it significant that plaintiff sought no psychiatric treatment nor obtained medication for his emotional and/or psychological impairment.

D.   <u>Non-exertional Impairments</u>

Plaintiff argues that the ALJ erred when he relied on the Medical-Vocational Guidelines to find plaintiff able to perform other work as it exists in the national economy. Plaintiff contends that the existence of his non-exertional impairments, and specifically, his sensorineural hearing loss, depression and pain, required the ALJ to elicit testimony from a vocational expert.

When an ALJ determines, as here, that a claimant is unable to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in work that exists in the national economy. <u>Harris v. Shalala</u>, 45 F.3d 1190, 1194 (8th Cir. 1995) (citing <u>Sanders v. Sullivan</u>, 983 F.2d 822, 823 (8th Cir. 1992)). When only exertional impairments are present, the Commissioner may meet this burden by relying on the Medical-Vocational Guidelines. <u>Bolton v. Bowen</u>, 814 F.2d 536,

537 n.3 (8th Cir. 1987). In the presence of non-exertional impairments, however, the ALJ may rely upon the Guidelines only if he makes a finding, supported by the record, that "the non-exertional impairment does not significantly diminish Plaintiff's residual functional capacity to perform the full range of activities listed in the Guidelines." Harris, 45 F.3d at 1194 (citing Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)). Absent such a finding, the Guidelines do not control, and the ALJ must call a vocational expert or produce other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's abilities. Id.; Sanders, 983 F.2d at 823; Thompson, 850 F.2d at 350. The Eighth Circuit has provided some guidance in applying this standard:

> In this context "significant" refers to whether the claimant's non-exertional impairment or impairments preclude the claimant from engaging in the full range of activities listed in the Guidelines under the demands of day-to-day life. Under this standard isolated occurrences will not preclude use of the Guidelines, however persistent non-exertional impairments which prevent the claimant from engaging in the full range of activities listed in the Guidelines will preclude the use of the Guidelines to direct a conclusion of disabled or not disabled. For example, an isolated headache or temporary disability will not preclude the use of the Guidelines whereas persistent migraine headaches may be sufficient to require more than the Guidelines to sustain the [Commissioner's] burden.

Thompson v. Bowen, 850 F.2d 346, 350 (8th Cir. 1988).

In his written decision, the ALJ here found only that plaintiff's limitation to performing unskilled work did not significantly compromise the full range of work activity. (Tr. 24.) It cannot be disputed that plaintiff's documented and diagnosed moderate to severe hearing loss constitutes a non-exertional limitation. 20 C.F.R. § 416.969a(c)(1)(iv). Yet a review of the ALJ's decision shows him to have wholly failed to recognize this impairment as a non-exertional limitation, and thus failed to undergo the analysis required to determine whether such impairment significantly diminished plaintiff's RFC to perform the full range of work. In the absence of such findings, the ALJ was required to elicit the testimony of a vocational expert.

Likewise, psychological disorders, such as depression and anxiety, are non-exertional impairments. Hunt v. Heckler, 748 F.3d 478, 481 (8th Cir. 1984). Such a condition need not be disabling in and of itself, however, in order to be considered a non-exertional impairment which precludes the use of the Guidelines. Id.; Mallett v. Schweiker, 721 F.2d 256, 258 (8th Cir. 1983) (severity of non-exertional impairment does not control; even a mild impairment may prevent a claimant from engaging in the full range of contemplated jobs). The ALJ here found plaintiff's mental impairment to result in mild restriction with respect to activities of daily living; mild to moderate restriction with respect to social functioning; and mild to moderate restriction with respect to concentration, persistence or pace. (Tr. 21.) While the ALJ

determined these restrictions not to rise to the level of a disabling mental condition, he nevertheless failed to undergo the analysis required to determine whether such impairment significantly diminished plaintiff's RFC to perform the full range of work. In the absence of such findings, the ALJ was required to elicit the testimony of a vocational expert.

Finally, with respect to plaintiff's allegations of pain, it is well established that pain is a non-exertional impairment. Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). However, "[u]se of the Guidelines is appropriate if the ALJ explicitly discredits subjective allegations of pain for a legally sufficient reason, such as inconsistencies in the record." Bolton, 814 F.2d at 538; see also Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Cruse, 867 F.2d at 1187. As set out above, the ALJ properly found plaintiff's subjective complaints of pain not to be credible under Polaski. However, given the ALJ's failure to properly analyze and consider plaintiff's other non-exertional impairments of significant hearing loss and depression, the ALJ's decision to rely solely on the Guidelines to find plaintiff able to perform work was inappropriate. Beckley, 152 F.3d at 1060.

In light of the above, the undersigned determines that plaintiff is entitled to have a vocational expert testify as to the extent his non-exertional impairments affect his ability to perform work. Beckley v. Apfel, 152 F.3d 1056, 1060 (8th Cir. 1998); Hunt,

748 F.2d at 480-81.

Therefore, the undersigned determines the Commissioner's decision not to be based upon substantial evidence on the record as a whole and the cause should be remanded to the Commissioner for further consideration. Because the current record does not conclusively demonstrate that plaintiff is entitled to benefits, it would be inappropriate for this Court to award plaintiff such benefits at this time.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the cause shall be remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

Judgment shall be entered accordingly.

_____

UNITED STATES MAGISTRATE JUDGE

Dated this _27th_ day of September, 2006.